UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARYNEL GERARDO MEDINA
LOPEZ,

      Petitioner,

v.

KEVIN RAYCRAFT, *et al.*,

      Respondents.

_____ /

Case No. 26-10784

Hon. F. Kay Behm
United States District Judge

**OPINION AND ORDER GRANTING PETITION FOR WRIT OF
<u>HABEAS CORPUS (ECF No. 1)</u>**

Before the court is a petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2241, ECF No. 1 ("Petition"), alleging that Petitioner Darynel Gerardo Medina Lopez has been unlawfully detained by United States Immigration and Customs Enforcement ("ICE"), and seeking as relief his release from detention. For the reasons that follow, the Petition is **GRANTED**.

**I.   FACTUAL BACKGROUND**

The following is undisputed in this matter. Darynel Gerardo Medina Lopez is a national and citizen of Honduras. He emigrated from Honduras after his father, a former Honduran police officer, had been

brutally murdered.  Petitioner has been in the United States since August 2014 when he entered the United States from Mexico with his mother and brother at the age of 11.  He entered the United States without being inspected or admitted by an immigration officer.

On July 13, 2017, an Immigration Judge in Louisiana ordered Petitioner's removal. Petitioner appealed the decision to the BIA, but the appeal was dismissed on May 22, 2018.  Petitioner was, however, later paroled into the United States after his removal order pursuant to a grant of special immigrant juvenile (SIJ) status under 8 U.S.C §1255(h) in December 2019.  ECF No. 1, PageID.7; ECF No. 10, PageID.106-07.  Petitioner was also later granted deferred action, and thus applied for and received employment authorization.  His employment authorization expired on May 13, 2026, but when exactly his deferred action status itself ends is unclear.  *See* ECF No. 11-1, PageID.129.

In March 2026, immigration officials detained Petitioner, purportedly under 8 U.S.C. § 1231, to execute his removal from the

United States under the final order of removal entered in 2017.[1]  He has been in custody at the St. Clair County Jail since that time.

## II.    PROCEDURAL BACKGROUND

Petitioner filed the instant habeas petition seeking release from custody on March 9, 2026 (ECF No. 1).  Petitioner argues (1) that SIJS status confers substantial legal protections which operate to prevent his removal while his motion to reopen and other proceedings regarding adjustment of status are pending, and (2) that his grant of deferred action status also prevents his removal.  ECF No. 1, PageID.10; ECF No. 11, PageID.122; ECF No. 10, PageID.107.  Thus the Petition contends that Petitioner's continued detention violates his due process rights, as he cannot be detained pending removal because his lawful removal is not reasonably foreseeable.

On March 9, 2026, the court entered a stipulated order requiring a response from the Government on March 23, 2026.  ECF No. 3.  But on March 12, 2026, before the response deadline, the Government

---

[1] The court uses Petitioner's timeline here.  *See* ECF No. 1, PageID.7. Respondents' brief put his detention starting in February 2025, ECF No. 7, PageID.66, which would change the analysis under *Zadvydas* somewhat.  All other representations are consistent with Petitioner's detention beginning in 2026.  *See* ECF No. 8, PageID.94.

transported Petitioner out of the state of Michigan without notifying his attorney, and attempted to remove Petitioner from the United States. On March 13, 2026, Petitioner's counsel learned of his transport to Texas and imminent removal, and filed a motion for temporary restraining order.  ECF No. 4.  To preserve its jurisdiction and the ability to enforce its orders, the court entered a temporary restraining order requiring the Petitioner be returned to Michigan and enjoining his removal from the state of Michigan or the United States.  ECF No. 5.  The Government filed a motion to vacate that order on March 23, 2026.  ECF No. 8.  On April 17, 2026, the court ordered responses from Petitioner on the motion to vacate and regarding the Government's response to the Petition.  The court recently denied the motion to vacate (ECF No. 14), and the Petition is now fully briefed.

In their opposition, Respondents invoke 8 U.S.C. § 1231(a) as the statutory authority governing Petitioner's detention.  ECF No. 7, PageID.69.  Respondents argue that this Court lacks jurisdiction to grant relief to Petitioner by operation of 8 U.S.C. § 1252(g).  *Id*. at 9-15. Petitioner, in his reply papers, contends that this Court has jurisdiction to order his release from detention and asks it to do so, or otherwise to

4

order that he be granted a bond hearing pursuant to 8 U.S.C. § 1226(a) within three business days.  ECF No. 1, PageID.15.

Counsel for the parties appeared before the court on May 12, 2026, and this opinion and order follows.

## III.   LEGAL BACKGROUND

### A.   Special Immigrant Juvenile Status

Congress established Special Immigrant Juvenile Status ("SIJ status" or "SIJS") in 1990 as part of the Immigration and Nationality Act ("INA") to provide immigration relief for "foreign-born children living in the United States who have been abused, neglected, abandoned, or similarly mistreated by a parent and for whom a state or administrative court has determined it would not be in their best interest to be returned to their home country or prior country of residence."  *A.C.R. v. Noem*, 809 F. Supp. 3d 103, 110 (E.D.N.Y. 2025); *see* 8 U.S.C. § 1101(a)(27)(J).

Applicants receive SIJS "only after satisfying a set of rigorous, congressionally defined eligibility criteria, including that a juvenile court find it would not be in the child's best interest to return to [their] country of last habitual residence and that the child is dependent on the

court or placed in the custody of the state or someone appointed by the state." *Osorio-Martinez v. Att'y Gen. United States of Am.*, 893 F.3d 153, 163 (3d Cir. 2018) (citing 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11(c)).  The statute defines an SIJ as a minor "who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with [one] or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law."  8 U.S.C. § 1101(a)(27)(J)(i); *see also* 8 C.F.R. § 204.11(c).  A successful applicant for SIJS is thus legally deemed a "ward of the United States with the approval of both state and federal authorities."  *Osorio-Martinez*, 893 F.3d at 168.

Congress has conferred upon SIJ designees a number of benefits. Recipients are exempted from certain grounds of inadmissibility, gain a pathway to lawful permanent resident ("LPR") status, and have access to both federally funded educational programming and preferential status when seeking employment-based visas.  *See* 8 U.S.C.

6

§§ 1232(d)(4)(A), 1153(b)(4).  Section 153 of the 1990 Act provides that certain inadmissibility grounds "shall not apply to a special immigrant described in section 1101(a)(27)(J) based upon circumstances that exist before the date the noncitizen[2] was provided such special immigrant status."  Immigration Act of 1990, Pub. L. No. 101-649, November 29, 1990, 104 Stat. 4978.  As codified at 8 U.S.C. § 1255(h)(2), this provision includes Section 1182(a)(6)(A)—inadmissibility for lack of admission, parole, or arrival at designated point of entry—among the prior grounds for deportation that no longer apply to an SIJS beneficiary.  8 U.S.C. § 1255(h)(2).

SIJ status also confers eligibility, and the right to apply, for adjustment of status to that of lawful permanent residents while within the United States.  *See* 8 U.S.C. § 1255(a), (h)(1).  Indeed, SIJ beneficiaries are explicitly "deemed . . . to have been paroled into the United States" for the purpose of this adjustment.  8 U.S.C. § 1255(h)(1).  This provision requires that an immigrant visa be "immediately available" at the time of filing and the applicant to be

---

[2] Where not quoting other opinions or statutory language, the court uses the term "noncitizen" as equivalent to the statutory term "alien."  *See Santos-Zacaria v. Garland*, 598 U.S. 411, 413 n.1 (2023).

"physically present in the United States."  8 U.S.C. § 1255; *Osorio-Martinez*, 893 F.3d at 169.

Congress has, however, set various limits on the number of visas that may be made available, *see* 8 U.S.C. §§ 1151, 1153, resulting in a waiting list when demand for visas exceeds supply, *see* 8 C.F.R. § 245.1(g)(1).  As of March 2025, more than 150,000 individuals had received SIJS classification but were unable to apply for adjustment of status due to a dearth of visas.  *See A.C.R. v. Noem*, 809 F. Supp. 3d 103, 110 (E.D.N.Y. 2025).  The relevant visa here is the employment-based fourth preference special immigrant category visa ("EB-4 visa").  *Id.*  Petitioner has been waiting since 2019 for a visa to become available, which will allow him to file for Adjustment of Status to lawful permanent resident, but he has not yet been able to do so.  ECF No. 1, PageID.7.

## B.   Deferred Action

Deferred action is "an act of administrative convenience to the government that gives some cases lower priority" for enforcement.  8 C.F.R. § 274a.12(c)(14).  It is an exercise "of enforcement discretion not to pursue the removal of certain aliens for a limited period in the

interest of ordering enforcement priorities in light of limitations on available resources, taking into account humanitarian considerations and administrative convenience." 8 C.F.R. § 236.21(c)(1). The grant of deferred action also allows noncitizens to apply for employment authorization. *See id.* § 274a.12(c)(14).

In 2022, due to the backlog in EB-4 visas, USCIS announced a deferred action program for persons with SIJS ("SIJS-DA Program"). *Walter A. v. Easterwood*, No. 26-cv-1393, 2026 LX 103238, at *11-12 (D. Minn. Mar. 26, 2026); *A.C.R. v. Noem*, 809 F. Supp. 3d 103, 111 (E.D.N.Y. 2025). The SIJS-DA Policy did not guarantee that an applicant would receive deferred action, but it did guarantee consideration for it, and it also created a "presumption in favor of deferred action." *A.C.R.*, 809 F. Supp. 3d at 111. Those who were granted deferred action could apply for employment authorization. *Id.* (citing 8 C.F.R. § 274a.12(c)(14)). Under the program, the deferred action status lasted for four-year periods, and permitted those with deferred action to apply for work authorization pursuant to 8 C.F.R. § 274a.12(c)(14). *Walter A.*, 2026 LX 103238, at *11-12 (citing a SIJSDA Approval Notice that stated: "Your grant of deferred action will remain

in effect for a period of four years from the date of this notice [2/11/2025] unless terminated earlier by USCIS."); *A.C.R.*, 809 F. Supp. 3d 103, 111 (E.D.N.Y. 2025) (under the program, "[a] successful applicant would benefit from deferred action for four years and could apply for renewal within 150 days of expiration").

## IV.   ANALYSIS

Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963).  Petitioner brings a petition for a writ of habeas corpus under 28 U.S.C. § 2241, which authorizes a district court to grant a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." *Phillips v. Court of Common Pleas*, 668 F.3d 804, 809 (6th Cir. 2012) (quoting 28 U.S.C. § 2241(c)(3)).  Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

Respondents urge that the jurisdiction-stripping provision of 8 U.S.C. § 1252(g) divests the court of jurisdiction to adjudicate this habeas petition to the extent Petitioner seeks to prevent his removal from the United States.  ECF No. 7, PageID.70-71; ECF No. 8, PageID.99.  Respondents further argue that, even were the Court to reach the merits of the Petition, Petitioner's SIJ status does not prevent his removal.  ECF No. 7, PageID.71.

Petitioner argues that his SIJ status with his pending motion to reopen (so that he may apply for adjustment of status, because a visa is immediately available) prevents his removal, as does his deferred action status.  ECF No. 11, PageID.124.

The court concludes that Section 1252(g)'s limited scope does not extend to the instant Petition.  Both Petitioner's SIJ status and his grant of deferred action render the order of removal non-executable.  Therefore, Respondents' actions have violated Petitioner's constitutional right to due process, and the Petition will be granted.

## A.    Jurisdiction Under Section 1252(g)

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the

11

decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

Although the Petition here is framed as a challenge to the legality of his detention, in effect Petitioner seeks to prevent his removal. This was, in part, accomplished by the TRO rather than the Petition itself – and so by vacating the TRO, there would be (in Respondents' view), no impediment to Petitioner's removal by the Petition itself, and the Petition did not explicitly seek injunctive relief. But portions of the Petition in substance, seek a determination that Petitioner's detention is illegal because he cannot be lawfully held under § 1231, and by operation of that legal determination, seeks to be released from custody. ECF No. 1, PageID.15. The substantive effect of that claim, and legal determination, is to challenge the ability of the Government to remove him under § 1231. *See Portillo v. Wolf*, No. 2:20-cv-12730, 2020 U.S. Dist. LEXIS 193458, at *4 (E.D. Mich. Oct. 19, 2020) ("Petitioner 'cannot circumvent [§ 1252(g)]'s review provisions and express limitations of district court jurisdiction by claiming that he is pursuing .

. . a due process claim that is somehow distinct from his removal order.'") (citations omitted).[3]

A request for a stay of removal, so construed, implicates the executive branch's decision to execute a final removal order and thus can fall with Section 1252(g)'s jurisdictional bar. *See Hamama v. Adducci*, 912 F.3d 869, 874 (6th Cir. 2018) ("the Attorney General's enforcement of long-standing removal orders falls squarely under the Attorney General's decision to execute removal orders and is not subject to judicial review"); *see, e.g.*, *Portillo*, 2020 U.S. Dist. LEXIS 193458; *Kazan v. Sessions*, No. 18-11750, 2023 LX 175878, at *5 (E.D. Mich. Mar. 3, 2023) (applying *Hamama* and concluding the court lacked jurisdiction to hear petitioner's habeas claims when the petitioner had a valid final removal order). Under Respondents' view, the proper venue for petitioner's petition – construed as a motion to stay his removal – is the Board of Immigration Appeals and then a U.S. Court of Appeals. ECF No. 8, PageID.98 (citing BIA Mot. to Stay, ECF No. 7-5, PageID.87; 8 U.S.C. § 1252(a)(5)). Yet the fact that Petitioner seeks to

---

[3] As far as the Petition also makes a claim under *Zadyvdas* regarding the length of his detention under § 1231, Respondents do not challenge the court's jurisdiction. ECF No. 12, PageID.136.

stay or in some other manner frustrate the Government's efforts at removal does not end the jurisdictional inquiry.

Despite the potential sweep of the language in the statute, Section 1252(g) is not a "zipper" clause that precludes judicial review of all habeas corpus cases involving removal. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). To the contrary, as the Supreme Court has explained, "the provision applies only to three discrete actions that the Attorney General may take: [the] 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Id.* (emphasis added). Section 1252(g) "was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *Enriquez-Perdomo v. Newman*, 54 F.4th 855, 864 (6th Cir. 2022) (quoting *Reno*, 525 U.S. at 485 n.9)). Prior to the enactment of Section 1252(g), the Government's decision to defer action against certain noncitizens or classes of noncitizens, but to refuse to do so for others, had subjected it to claims of selective prosecution, due process, and equal protection in the courts. *Reno*, 525 U.S. at 484-85. Section 1252(g) was "designed to give some measure of protection to 'no

deferred action' decisions and similar discretionary determinations." *Id.* at 485.

Section 1252(g) thus does not apply to the "many other decisions or actions that may be part of the deportation process," such as decisions to include particular "provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order," *Reno*, 525 U.S. at 482, or the decision to detain an individual, even when done as part of the removal process.  *See Ozturk v. Hyde*, 136 F.4th 382, 397 (2d Cir. 2025) (finding "Öztürk's habeas claims . . . fall outside of § 1252(g)'s narrow jurisdictional bar.  She does not challenge the government's decision to commence proceedings, adjudicate her case, or execute a removal order.  Instead, her petition challenges her unlawful *detention*, . . . .  Section 1252(g) 'does not preclude jurisdiction over the challenges to the legality of [a noncitizen's] detention.'") (citation omitted).

A number of courts have applied that logic and reasoned that, given its narrow scope and its focus on preserving prosecutorial discretion, Section 1252(g) does not prohibit the exercise of jurisdiction over habeas petitions "seeking to challenge ICE's legal *authority* over a

removal order, rather than its discretionary decisions regarding removal orders." *R.O.A. v. Edlow*, 805 F. Supp. 3d 565, 574 (D. Vt. 2025) (emphasis added). Under this rationale, a habeas petition is permissible if it does not call into question "'why the Secretary chose to execute the removal order,' but [rather] 'whether the way Respondents acted accords with the Constitution and the laws of this country.' While the first question challenges ICE's discretion to execute a removal order, the second question asks whether the Constitution or other law deprives ICE of power over the removal order." *S.N.C. v. Sessions*, No. 18-CV-7680, 2018 U.S. Dist. LEXIS 199761, 2018 WL 6175902, at *5 (S.D.N.Y. Nov. 26, 2018) (cleaned up); *see also You v. Nielsen*, 321 F. Supp. 3d 451, 457 (S.D.N.Y. 2018).

The Sixth Circuit shares that view: District courts retain jurisdiction over noncitizens' challenges to the lawfulness of their detention and removal, even if the noncitizen has a final order of removal, if that removal order is "not executable." *See Enriquez-Perdomo v. Newman,* 54 F.4th 855, 865 (6th Cir. 2022) (The phrase "'[e]xecute removal orders' [in § 1252(g)] contemplates removal orders that are subject to execution. By definition, when a removal order is not

16

subject to execution, government officials have no authority, discretionary or otherwise, to execute it."); *see also Garcia v. Mullin*, No. 3:25-CV-00605, 2026 LX 241544, at *19 (E.D. Tenn. May 8, 2026) (reading *Enriquez-Perdomo* to say that § 1252(g) does not impede judicial review of a habeas challenge to executive detention when the detainee has received a discretionary form of affirmative relief from removal."). Several courts of appeals share that view as well. *See also Arce v. United States*, 899 F.3d 796, 800 (9th Cir. 2018) ("Anaya is not attacking the removal itself, as he does not challenge the validity of his removal order, or claim that the Attorney General should have exercised discretion to delay his removal. Instead, he points out—correctly—that the Attorney General lacked the authority to execute the removal order . . . ."); *Garcia v. AG of the United States*, 553 F.3d 724, 729 (3d Cir. 2009) (holding § 1252(g)'s jurisdictional bar does not apply when a petitioner "is not challenging the discretionary *decision* to commence proceedings, but is challenging the very *authority* to commence those proceedings") (emphasis in original). Put more simply, section 1252(g) prohibits claims based on the exercise of "prosecutorial discretion," *Reno,* 525 U.S. at 489, but it is not within the "discretion" of

17

the Executive to exceed the scope of its authority or otherwise violate the law.

## B.     Effect of Deferred Action Status

The question becomes whether Petitioner's deferred action status goes to the government's authority to remove Petitioner, rather than wholly discretionary decisions within the Executive's exclusive domain. In Respondents' view, the Government's discretionary grant of deferred action has no effect on their ability to deport Petitioner at any time, and thus judicial review is barred.[4]  Not so.  Courts around the country have agreed that deferred action status operates to prevent the executive branch from having lawful authority to effect Petitioner's removal from the United States.  *See Fornalik v. Perryman*, 223 F.3d 523, 529 (7th Cir. 2000) (deferred action granted to applicant under the Violence Against Women Act that was issued after the removal order could be enforced to prevent petitioner's removal); *Espinoza-Sorto v. Agudelo*, No. 1:25-CV-23201, 2025 U.S. Dist. LEXIS 212217, 2025 WL 3012786,

---

[4] Respondents also seemed to indicate that they have no way of knowing whether Petitioner has deferred action status.  Petitioner's work authorization card, however, lists the code "C14," which is only offered to persons with deferred action. Employment Authorization, USCIS, https://www.uscis.gov/employment-authorization [https://perma.cc/C5W8-DMCL].

at *5 (S.D. Fla. Oct. 28, 2025) ("Although the caselaw is limited, courts have held that a grant of deferred action is an affirmative immigration benefit that effectively makes it unlawful for a removal order to be executed while the alien has deferred action status.") (quotation marks omitted); *Walter A. v. Berg*, No. 25-cv-4720, 2025 LX 549484, at *9 (D. Minn. Dec. 22, 2025) (making the same finding as *Espinoza-Sorto*); *Mata v. Sullivan*, No. 1:26-cv-1827-AT, 2026 LX 243067, at *15, 43 (N.D. Ga. May 4, 2026) ("deferred action status protects recipients from removal"); *Ayala v. Bondi*, 794 F. Supp. 3d 901, 912 (W.D. Wash. 2025) ("Numerous Ninth Circuit opinions confirm that deferred action prevents recipients' removal from the United States." (collecting cases)).

As indicated, the Sixth Circuit has also already spoken on this question, and those decisions are binding this court. "[A] removal order 'rendered unenforceable by a grant of [deferred action]' create[s] a non-executable removal order and [is] thus outside the scope of § 1252(g)'s jurisdiction stripping provision." *Enriquez-Perdomo v. Newman*, 149 F.4th 623, 629 (6th Cir. 2025) (citing *Enriquez-Perdomo v. Newman*, 54 F.4th 855, 867 (6th Cir. 2022) (deferred action under DACA). As the Supreme Court has put it, "Approval of deferred action status means

that, for [] humanitarian reasons . . . , no action will thereafter be taken to proceed against an apparently deportable alien, even on grounds normally regarded as aggravated." *Reno*, 525 U.S. 471, 484 (1999) (quoting 6 C. Gordon, S. Mailman, & S. Yale-Loehr, Immigration Law and Procedure § 72.03 [2][h] (1998)).  Under USCIS's own most recent policy, despite other changes, "aliens with current deferred action based on their SIJ classification will generally retain this deferred action, as well as retain their current employment authorization provided based on this deferred action, until the current validity periods expire." USCIS, Policy Alert PA-2025-07 (June 6, 2025), https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20250606-SIJDeferredAction.pdf [https://perma.cc/YNQ2-SZEY].

A grant of deferred action is the executive branch's prerogative. The executive branch could take steps change Petitioner's status. USCIS, Special Immigrant Juveniles, https://www.uscis.gov/working-in-US/eb4/SIJ [https://perma.cc/BJ43-LN6Z] ("USCIS, in its discretion, may terminate a grant of deferred action, through the issuance of a Notice to Appear or Notice of Termination, and revoke any associated

20

employment authorization prior to the end of the validity period."). But they do not appear to have done so, and as long as that status is in place, Petitioner cannot be lawfully removed from this country, nor can he be detained under a final order of removal. *See Enriquez-Perdomo*, 54 F.4th at 863 ("Although the government was free to terminate that relief, it did not, and Enriquez-Perdomo's arrest and detention despite that relief were unauthorized."); *see also, e.g.*, *Primero v. Mattivelo*, No. 1:25-cv-11442, 2025 LX 208425, at *14-15 (D. Mass. July 9, 2025) ("ICE has requested that USCIS terminate Petitioner's deferred action in order to remove him from the United States, but there is no indication in the record that USCIS has granted ICE's request to date."). "[W]hen a non-citizen possesses a form of (1) discretionary, (2) affirmative relief from removal (3) under a program (4) with associated benefits, § 1252(g) does not stand in the way of that non-citizen's challenge to the termination of that relief or to executive detention that comes despite his possession of that relief[.]" *Garcia v. Mullin*, No. 3:25-CV-00605, 2026 LX 241544, at *20 (E.D. Tenn. May 8, 2026) (citing *Enriquez-Perdomo*, 54 F.4th at 863-64).

21

It is clear that Petitioner's claims arise from USCIS's grant of deferred action, combined with ICE's refusal to honor that grant, rather than the execution of a removal order.  The grant was discretionary, but is an affirmative relief from removal.  *Barrios Garcia v. DHS*, 25 F.4th 430, 435 (6th Cir. 2022) (stating that "deferred-action status would protect [the plaintiffs] from removal from this country").  The grant was under the SIJ-DA program, with associated employment benefits.  Because Petitioner challenges Respondent's authority, rather than discretion, to remove him in violation of that status, his Petition does not fall within the narrow scope of § 1252(g)'s jurisdictional bar.[5]

---

[5] A number of other district courts around the country have agreed with this determination and result in regard to deferred action status.  They are cited here for brevity's sake.  *See, e.g.*, *Blanco v. Noem*, No. 1:25-CV-2111, 2026 LX 50665, at *2 (W.D. Tex. Jan. 12, 2026); *Cruz v. English*, No. 3:25-CV-919, 2025 LX 502520, at *11 (N.D. Ind. Dec. 18, 2025); *Alvarado v. Noem*, No. 1:25-cv-01959, 2026 LX 176738, at *6 (E.D. Cal. Mar. 18, 2026); *Castillo v. Parra*, No. 25-25011, 2025 LX 648492, at *13 (S.D. Fla. Dec. 1, 2025).  The court acknowledges that there are some contrary decisions.  *See, e.g.*, *Singh v. Napolitano*, 500 F. App'x 50, 52 (2d Cir. 2012) (concluding that the petitioner was "challeng[ing] the validity and execution of his removal order" by "assert[ing] that his custody pursuant to a final order of removal is illegal because he was granted asylum, a status precluding removal from the United States"); *Gomez v. Scott*, No. C25-0522, 2025 LX 141312, at *14 (W.D. Wash. June 20, 2025) ("the court is not aware of[ ]any case authority addressing the narrow issue of whether § 1252(g) bars review of a decision to execute a valid removal order where the petitioner has been granted deferred action . . .").  The court considers the analysis in the former set of cases more persuasive.  And it finds that set of cases more persuasive in part because courts outside the Sixth Circuit have not had to reckon with the effect of *Enriquez-Perdomo*, which is binding on this court and held that "when a removal order is not subject to execution,

Accordingly, Section 1252(g) does not strip this court of jurisdiction due to Petitioner's deferred action status.

## C.    Effect of SIJ Status and Petitioner's Motion to Reopen

Although the deferred action status is independently sufficient to anchor the court's jurisdiction, the second question is whether Petitioner's SIJ status, and his pending motion to reopen proceedings with the BIA, similarly makes Petitioner's removal unlawful.  In Respondents' view, SIJ status and Petitioner's motion to reopen have no effect on their ability to remove Petitioner at any time, and thus judicial review is barred.  *See* ECF No. 7, PageID.70-71.  Again, that is not so, and Petitioner's SIJ status, when combined with his ongoing proceedings to seek adjustment of status for an available visa, also anchors the court's jurisdiction over Petitioner's habeas claims.

The analysis starts with the text of the statute.  Petitioner is charged with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i) because he was not lawfully admitted to the United States upon entry.  ECF No. 7, PageID.66.  And on that same basis, Respondents seek to effectuate

government officials have no authority, discretionary or otherwise, to execute it." 54 F.4th at 865 (6th Cir. 2022).

23

his removal. ECF No. 7-2, PageID.80 (citing section 212(a)(6)(A)(i)(I) of the Immigration and Nationality Act (INA), which was codified in § 1182). SIJ status, however, exempts Petitioner from removability under that provision at this time because Petitioner was found removable under a ground that his later-granted SIJ status waived for purposes of adjustment of status.

8 U.S.C. § 1182(a)(6)(A)(i) states that "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." *See also* ECF No. 7-2, PageID.80 ("USBP placed Medina Lopez into removal proceedings with issuance and filing of Form I-862, Notice to Appear (NTA), charging him as being subject to removal under section 212(a)(6)(A)(i)(I) of the Immigration and Nationality Act (INA), because he is an alien present in the United States without having been admitted or paroled or who arrived in the United States at any time or place other than as designated by the Attorney General."). Two other sections, however, serve to explain why section 1182(a)(6)(A)(i) cannot apply to Petitioner for purposes of removal at this time.

24

The first, 8 U.S.C. § 1255(h), paroles Special Immigrant Juveniles into the United States so that they may adjust their status to permanent residency. *Diaz-Calderon v. Barr*, No. 2:20-CV-11235-TGB, 2020 U.S. Dist. LEXIS 173509, at \*13 (E.D. Mich. Sep. 22, 2020); *see* § 1255(h)(1) (immigrants with SIJ status "shall be deemed, for purposes of subsection (a), to have been paroled into the United States"). For purposes of adjustment of status, Section 1255(h) waives a number of inadmissibility grounds, *including* § 1182(a)(6)(A)(i), which is the ground upon which Medina Lopez had been found inadmissible. § 1255(h)(2)(A) ("in determining the alien's admissibility as an immigrant- paragraphs (4), (5)(A), (6)(A), (6)(C), (6)(D), (7)(A), and (9)(B) of section 1182(a) of this title shall not apply;") (underline added); *see also Diaz-Calderon*, 2020 U.S. Dist. LEXIS 173509, at \*13. It is true, as Respondents' counsel argued, that some cases have found that this section is facially intended to apply for purposes of adjustment of status, rather than a blanket removability waiver. *See Cortez-Amador v. AG United States*, 66 F.4th 429, 433 (3d Cir. 2023); 8 C.F.R. § 245.1(a) (a "special immigrant described under section 101(a)(27)(J) of the Act shall be deemed, for the purpose of applying the adjustment to

25

status provisions of section 245(a) of the Act, to have been paroled into the United States, regardless of the actual method of entry into the United States."). But neither Respondents' counsel, nor *Cortez-Amador*, nor that portion of the implementing regulations, discuss the additional impact of the deportability provisions of 8 U.S.C. § 1227 on interpreting the effect of section 1255(h). Section 1227(a) states that any noncitizen "in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens[.]" That section (titled "Deportable aliens") then lists a number of categories of deportable noncitizens. Under subsection (c), the statute waives certain deportation grounds for SIJ recipients. It states, in full: "Paragraphs (1)(A), (1)(B), (1)(C), (1)(D), and (3)(A) of subsection (a) (other than so much of paragraph (1) as relates to a ground of inadmissibility described in paragraph (2) or (3) of section 1182(a) of this title) shall not apply to a special immigrant described in section 1101(a)(27)(J) of this title based upon circumstances that existed before the date the alien was provided such special immigrant status." § 1227(c).

To break that down: Section 1101(a)(27)(J) refers to SIJS. The entirety of section 1227(c) thus operates to waive certain deportation grounds for recipients of SIJ status. The first of those grounds, found in section 1227(a)(1)(A), are persons deemed inadmissible. So section 1227(c) operates to generally exempt from deportability SIJS recipients who were deemed inadmissible before they received SIJS status (such as Petitioner). Not all persons deemed "inadmissible" are excepted. Section 1182(a)(2) and (a)(3) refer to persons found inadmissible for "[c]riminal and related grounds" and "security and related grounds," neither of which apply here. Respondents assert that Petitioner is removable under 1182(a)(6)(A)(i), which deemed Petitioner "inadmissible" for being "present in the United States without being admitted or paroled[.]" However, persons with SIJS, who were deemed inadmissible under 1182(a)(6)(A), are no longer deportable for that reason of inadmissibility by operation of § 1227(c).[6]

---

[6] Again, this does not operate as a total bar on deportability. It only means that Respondents cannot lawfully deport Petitioner on the specific grounds they have asserted – for Petitioner's original illegal entry into the United States. "SIJ status does not invariably prevent DHS from declaring an alien removable. Section 237(c) of the INA provides that certain grounds for deportation 'shall not apply' to special immigrant juveniles 'based upon circumstances that existed before the date the alien was provided such special immigrant status.' 8 U.S.C. § 1227(c). Those

27

The court acknowledges that "removability" may not necessarily mean the same thing as "deportability." A noncitizen can be removed either on grounds of inadmissibility under section 1182(a), or on grounds of deportability under section 1227(a). 8 U.S.C. § 1229a(a)(2). Defined by the INA, the term "removable" means "(A) in the case of an alien not admitted to the United States, that the alien is inadmissible under section 1182 . . . , or (B) in the case of an alien admitted to the United States, that the alien is deportable under section 1227 . . . ." 8 U.S.C. § 1229a(e)(2). Removability is the broader term that encompasses both inadmissibility and deportability.[7]

grounds are: inadmissibility at the time of entry, *id.* § 1227(a)(1)(A); unlawful presence in the United States, *id.* § 1227(a)(1)(B); violation of nonimmigrant status, *id.* § 1227(a)(1)(C); termination of conditional permanent resident status, *id.* § 1227(a)(1)(D); and failure to notify the government of a change of address, *id.* § 1227(a)(3)(A). Certainly, though, there are many other grounds of deportability that SIJ status does not waive." *United States v. Granados-Alvarado*, 350 F. Supp. 3d 355, 363-64 (D. Md. 2018).

[7] "Federal immigration law governs both the exclusion of aliens from admission to this country and the deportation of aliens previously admitted. [Since 1996,] the Government has employed a unified 'removal proceeding' for exclusions and deportations alike. But the immigration laws have always provided separate lists of substantive grounds for the two actions. One list specifies what crimes render an alien excludable, see 8 U. S. C. § 1182(a), while another--sometimes overlapping and sometimes divergent--list specifies what crimes render an alien deportable, see § 1227(a)." *Judulang v. Holder*, 565 U.S. 42, 42 (2011). "[I]nadmissibility targets those who are generally not yet in the United States, whereas deportability targets those who are present in the United States[.]" *Joshua M. v. Barr*, 439 F. Supp. 3d 632, 662 (E.D. Va. 2020). A noncitizen may be

For petitioners with SIJ status who entered the United States without being admitted under 1182(a)(6)(A), it is not entirely clear whether (1) their parole and unique SIJ status ought to result in them being considered "admitted" to the United States, and therefore simply not deportable under section 1227(c), (2) whether their admissibility ought to be evaluated solely under section 1182, or (3) whether these overlapping provisions both apply to SIJS recipients.  If it is the first, then for the reasons explained above, Petitioner is straightforwardly not removable.  At least one court of appeals has held that "parole as a Special Immigrant Juvenile, under 8 U.S.C. § 1255(h), qualifies as an admission 'in any status' for the purposes of 8 U.S.C. § 1229b(a)(2)." *Garcia v. Holder*, 659 F.3d 1261, 1263 (9th Cir. 2011).  The logic of that decision may or may not apply to whether SIJ-status based parole counts as admission for purposes of removability.  *See Joshua M. v. Barr*, 439 F. Supp. 3d 632, 665 (E.D. Va. 2020).  The court need not purport to resolve that question, however, because it is enough for purposes of this analysis to say that § 1227(c) waives Petitioner's

---

deportable because, at the time of his or her entry, he or she was inadmissible to the United States.  *See* 8 U.S.C. § 1227(a)(1)(A)-(B); *but see* 8 U.S.C. § 1182(a)(6)(A)(i) (a noncitizen present in the United States without having been admitted or paroled is inadmissible).

relevant inadmissibility ground for purposes of deportation, so to lawfully remove Petitioner, Respondents must rely only on inadmissibility (and removability) under section 1182.

Viewed in context and in light of the entire statutory scheme, however, possessing SIJ status with a currently available pathway to apply for adjustment of status, exempts Petitioner from removability under *either* inadmissibility or deportability for the ground of entering the United States without being admitted.  While the case law appears to be limited, several courts have found that a habeas petitioner's SIJ status, combined with pending proceedings such as a motion to reopen based on visa availability (the same situation Petitioner has shown is present here) is sufficient to prove entitlement to certain due process protections preventing removal.  *See Walter A. v. Easterwood*, No. 26-cv-1393, 2026 LX 103238, at *57-58 (D. Minn. Mar. 26, 2026) ("The statutory language and history of the SIJS statutory scheme demonstrates Congress's clear intent that Special Immigrant Juveniles are to remain in the United States pending their application for adjustment of status."); *Xol-Maas v. Francis*, No. 26-CV-00025, 2026 LX 95924, at *21 (S.D.N.Y. Feb. 18, 2026) (granting habeas relief to

petitioner with SIJ status who had filed a motion to reopen with immigration court on grounds that SIJS conferred due process rights during that procedure: "Congress clearly contemplated that SIJ designees would remain in the United States while awaiting adjudication of their adjustment of status applications."); *see also Walter A. v. Berg*, No. 25-cv-4720, 2025 LX 549484, at *9 (D. Minn. Dec. 22, 2025); *Joshua M. v. Barr*, 439 F. Supp. 3d 632, 655 (E.D. Va. 2020) (in a different procedural posture, finding that "a juvenile who received SIJ status could be removed on certain grounds, such as serious criminal convictions, *but could not be removed for having [] entered the country somewhere other than at an official checkpoint*.") (citing 8 U.S.C. § 1227(c) (emphasis in original); *Herrera v. Baltazar*, No. 1:25-cv-04014, 2026 LX 25042, at *32 (D. Colo. Jan. 13, 2026) ("That Respondents have initiated Petitioner's removal based on conduct exempted by the INA [entry without inspection under 8 U.S.C. § 1182(a)(6)(A)] further underscores the illegitimacy of Petitioner's detention").[8]

---

[8] Petitioner argued that the motion to reopen is the controlling factor in this case, while acknowledging that SIJ status is not on its own a bar to removal. In the court's understanding, the motion to reopen is important because it shows that there is an available pathway for Petitioner to apply for adjustment of status, therefore invoking due process rights inherent to the procedures in section 1255.

The court acknowledges nonbinding authority to the contrary. *See Siguencia-Romero v. Joyce*, 2025 LX 449333, at \*11 n.6 (S.D.N.Y. Nov. 5, 2025) (finding that "[t]o the extent that Petitioners also challenge their removal on the ground that it should be restrained pending resolution of [Petitioner's] motion to reopen before the BIA, such a challenge is barred by [the jurisdiction-stripping provision in] 8 U.S.C. § 1252(a)(5)"); *Leon v. Noem*, No. 3:25-CV-01495, 2025 LX 637587, at \*7 (W.D. La. Oct. 30, 2025) (stating in dicta that petitioner's "SIJS status is not what prevents [his] removability" but holding that deferred action status prevented Petitioner's removal); *Vasquez v. Moniz*, 788 F. Supp. 3d 177, 181 (D. Mass. 2025) ("federal courts have routinely recognized that SIJ status alone does not render an alien lawfully present in the country and thus does him to release, nor does it prevent the government from affecting his removal."); *Cortez-Amador v. AG United States*, 66 F.4th 429, 431 (3d Cir. 2023) ("the plain language demonstrates that Petitioner is removable despite his SIJS"). However, the court does not read these nonbinding decisions to speak to the situation here; to the extent they do, they pay insufficient attention to

the overall statutory scheme, and in particular the effect of § 1227(c) when combined with the text and purpose of § 1255(h).[9]

"It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Sturgeon v. Frost*, 577 U.S. 424, 438 (2016) (citing *Roberts v. Sea-Land Services, Inc.*, 566 U.S. 93, 102 (2012)).  To premise the removal of an SIJ beneficiary on the same inadmissibility grounds that Congress expressly exempted from consideration when determining whether an SIJ beneficiary is eligible to apply for an adjustment of status, and then receive even greater benefits as an LPR, is at odds with Congress's goal of providing SIJ beneficiaries with "the opportunity to apply for special immigrant classification and lawful permanent resident status, with [the] possibility of becoming citizens of the United States in the future." 58 Fed. Reg. 42843, 42844 (Aug. 12, 1993); *see also Osorio-Martinez*, 893

---

[9] For example, *Vasquez* cites *United States v. Granados-Alvarado*, 350 F. Supp. 3d 355, 357 (D. Md. 2018), to support the proposition that federal courts have "routinely" held that SIJ status "does not make [an noncitizen's] presence lawful[.]" But that case supports this court's reading, finding that SIJ status waives certain grounds for deportation for special immigrant juveniles, such as inadmissibility at the time of entry, *see* § 1227(a)(1)(A), but noting that "there are many other grounds of deportability that SIJ status does not waive." *United States v. Granados-Alvarado*, 350 F. Supp. 3d 355, 363-64 (D. Md. 2018).

F.3d at 163 ("Congress established SIJ status in 1990 in order to 'protect abused, neglected or abandoned children who, with their families, illegally entered the United States'") (quoting *Yeboah v. U.S. Dep't of Justice*, 345 F.3d 216, 221 (3d Cir. 2003)).  In this vein, the practical effect of Respondents' reading is relevant to the analysis. Respondents' reasoning ignores the fact that a noncitizen may only apply for an adjustment of status if they remain physically present in (and are not removed from) the United States.  *See* 8 U.S.C. § 1255(i); 8 C.F.R. § 245.1(a); 8 C.F.R. § 245.2(a)(4)(ii)(A)-(B).  So to remove an SIJS recipient such as Petitioner from the United States without allowing him to apply for adjustment of status when a visa is available renders the status functionally meaningless and deprives him completely of the benefit of that process.  *See Walter A. v. Easterwood*, No. 26-cv-1393, 2026 LX 103238, at \*65 (D. Minn. Mar. 26, 2026) ("Walter A.'s removal while possessing valid, unrevoked SIJS 'would render SIJ status a nullity.'") (quoting citation omitted); *Diaz-Calderon v. Barr*, No. 2:20-CV-11235, 2020 U.S. Dist. LEXIS 173509, at \*48 (E.D. Mich. Sep. 22, 2020) ("respondents would "render SIJ status 'worthless if each Special Immigrant Juvenile is nevertheless subject to removal while awaiting

34

the opportunity to adjust status.'"); *Walter A. v. Berg*, No. 25-cv-4720, 2025 LX 549484, at \*9 (D. Minn. Dec. 22, 2025) ("SIJ status and eligibility require a physical presence in the United States.  If Petitioner were removed, he would lose SIJ status and any meaningful opportunity for judicial review would be foreclosed.") (citation omitted); *Joshua M. v. Barr*, 439 F. Supp. 3d 632, 679 (E.D. Va. 2020) (granted a stay of removal for an SIJ status recipient who had a final order of removal, and noting that SIJ status would be effectively nullified by removal because "it does not appear that [the noncitizen] would be able to pursue adjustment of his status from SIJ to a lawful permanent resident because doing so requires physical presence within the United States.").

Additionally, to premise the removal of an SIJ beneficiary on the same inadmissibility grounds that Congress expressly exempted from consideration for deportability appears to read out the provisions and purpose of § 1227(c) from the intended overall statutory scheme.  If Respondents are right that SIJ recipients, themselves not yet admitted to the United States, at all times remain "removable" on grounds of

inadmissibility,[10] notwithstanding the waiver of certain inadmissibility grounds under section 1182 through § 1255(h), then the deportability waiver in section 1227(c) seems to serve no practical function. *See Nielsen v. Preap*, 586 U.S. 392, 414 (2019) (the interpretive canon against surplusage reflects the idea that "every word and every provision is to be given effect [and that n]one should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence.") (alteration in original) (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012)). That is, if it is correct that SIJ recipients are always removable because they are inadmissible (on any ground), then they are also deportable for reason of their inadmissibility. 8 U.S.C. § 1227(a)(1)(A) ("Any alien who at the time of entry or adjustment of status was within one or more of the classes of aliens inadmissible by the law existing at such time is deportable."). But foreclosing deportability for inadmissibility through section 1227(c) appears to have no functional effect for SIJS recipients if the inadmissibility avenue under section 1182 at all times remains

---

[10] Recall, "Congress established SIJ status in 1990 in order to 'protect abused, neglected or abandoned children who, with their families, *illegally entered* the United States.'" *Osorio-Martinez*, 893 F.3d at 163 (emphasis added).

available to the Executive.  The better, and more natural, reading of section 1227(c) and the statute as a whole is that, because SIJ recipients are by operation of section 1255(h) not removable for certain grounds of *inadmissibility* under section 1182 while they pursue adjustment of status, 1227(c) operates to foreclose the possibility that they are nonetheless *deportable* for those same grounds under section 1227.  *See* 8 U.S.C. § 1229a(a)(2), (e)(2).  USCIS' own statements seem to share this view, because they speak to removal generally, not only deportability.  Chapter 7 - Special Immigrant Juveniles, USCIS, https://www.uscis.gov/policy-manual/volume-7-part-f-chapter-7 [https://perma.cc/HM29-WRWV] (note 28: "Grounds of removal under INA 237(c) [8 U.S.C. § 1227(c)] that correspond with exempted inadmissibility grounds are also waived for SIJs.").

Therefore, Petitioner's SIJ status and pending motion to reopen his removal proceedings in order to apply for adjustment of status operate to render Petitioner's order of removal unenforceable and non-executable.  *See Enriquez-Perdomo v. Newman*, 54 F.4th at 865; *Diaz-Calderon*, 2020 U.S. Dist. LEXIS 173509, at *46-47 (finding the INA "specifically provides that Diaz can no longer be removed pursuant to §

1182(a)(6)(A)(i). Respondents therefore have no statutory authority to detain [him] . . .”). Respondents, in their briefs, say only that "Petitioner cites no authority for the assertion that SIJ status alone affects the finality of an order of removal or renders a noncitizen immune from detention or removal." ECF No. 7, PageID.70-71. But that argument (1) does not actually cite any authority for the inverse proposition, i.e. that SIJ status and a motion to reopen does *not* prevent a noncitizen's removal under § 1182(a)(6)(A)(i), and (2) seems to sidestep the issue of whether SIJ status and efforts to adjust status renders an otherwise valid removal order unenforceable in this instance, in favor of arguing that SIJ status cannot affect the order's "finality" or that it renders the noncitizen totally "immune" from removal. It also ignores that district courts (cited above) have held that petitioners with SIJ status, with ongoing proceedings incident to adjustment of status, *do* have a limited right not to be removed on the grounds of inadmissibility. The court therefore follows the statutory text and the reasoning above to hold that Medina Lopez cannot be removed pursuant to § 1182(a)(6)(A)(i) while his SIJ status is active

38

and while his motion to reopen or other proceedings ancillary to adjustment of status are pending.

Like deferred action, SIJ status is largely within the Executive's purview. But it, like deferred action, cannot be stripped away without due process. *Xol-Maas v. Francis*, No. 26-CV-00025, 2026 LX 95924, at *21 (S.D.N.Y. Feb. 18, 2026) ("Congress afforded SIJ designees procedural rights 'to ensure they would not be stripped of SIJ protections without due process.'") (quoting *Osorio-Martinez*, 893 F.3d at 170-71). SIJ status may only be revoked for "good and sufficient cause." 8 U.S.C. § 1155. And pursuant to DHS's implementing regulations, revocation must be on notice. 8 C.F.R. § 205.2. The designee must be permitted an opportunity to challenge the revocation by offering evidence in opposition to the asserted ground for revocation. *Id.* The agency must provide a written decision that explains the "specific reasons for the revocation," which the designee will have an opportunity to appeal within the agency. *Id.* Judicial review of such revocation may also be available under the APA. *See, e.g., Ghaly v. INS*, 48 F.3d 1426, 1434 n.6 (7th Cir. 1995). Petitioner's SIJ status has not been revoked. Because a visa is available, Petitioner

39

is potentially eligible to apply for adjustment of status, pending a decision on his motion to reopen. His right to that process while he maintains SIJ status supersedes the effect of his removal order, which itself predated his grant of SIJS. Therefore, Petitioner's claims based on his SIJ status and efforts to apply for adjustment of status go to the Executive's authority to detain him, not to the decision to remove him, and jurisdiction is proper.

## D. *Zadvydas* Framework

8 U.S.C. § 1231 governs the detention of non-citizens "during" and "beyond" "removal." 8 U.S.C. § 1231(a)(2)-(6). The "removal period" begins once a noncitizen's removal order "becomes administratively final." 8 U.S.C. § 123l(a)(l)(B). The removal period lasts for 90 days, during which ICE "shall remove the [non-citizen] from the United States." And ICE "shall detain the [non-citizen]" as it carries out the removal. 8 U.S.C. § 1231(a)(l)-(2). After the initial 90-day period, a noncitizen "ordered removed . . . as inadmissible under section 1182 of this title . . . may be detained beyond the removal period" or "released"

subject to terms of supervision.  8 U.S.C. § 1231(a)(6); *Zadvydas v. Davis*, 53 U.S. 678, 683 (2001).[11]

Although the statute does not specify a time limit on how long DHS may detain a noncitizen in the post-removal period, the Supreme Court has "read an implicit limitation" into § 1231(a)(6) "in light of the Constitution's demands," and has held that a noncitizen may be detained only for "a period reasonably necessary" to bring about that person's removal from the United States.  *Zadvydas*, 533 U.S. at 689. *Zadvydas* has been extended to apply to persons who were never admitted to the United States.  *Clark v. Martinez*, 543 U.S. 371 (2005).

The statute thus "does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689.  The framework proceeds as follows: a six-month period of detention is presumptively reasonable.  *Id.* at 701. After that, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  *Id.*  And as the period of prior post-removal confinement

---

[11] Petitioner also asserted that he cannot lawfully be held because that 90-day period expired years earlier.  Because the court grants his requested relief here, it does not address that alternative argument at this time.

41

grows, what counts as the "reasonably foreseeable future" necessarily shrinks. Said differently: A person with a final removal order "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

### E. Merits

For the reasons explained above, the § 1252 jurisdictional bar does not apply. Given that, the court turns to the *Zadvydas* framework. Here, Petitioner has been detained approximately three months, which is presumptively reasonable. However, Petitioner has nonetheless satisfied his burden of proving that there is no significant likelihood of his lawful removal from the United States in the reasonably foreseeable future. "During the six-month period, the presumption of reasonableness is the default, and the government bears no burden to justify detention. But if a petitioner claims and *proves* that his removal is not reasonably foreseeable—including during the six-month period— the petitioner can overcome that presumption and detention is no longer authorized." *Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 375 (D.

Md. 2025) (cleaned up).  In most cases, this heavy standard will be impossible to meet and habeas petitions will be easily denied.  *See id.*

Here, even in this relatively short period, Medina Lopez has provided good reason to believe that his lawful removal is not reasonably foreseeable because he has been granted deferred action and SIJ status.  Start with the deferred action.  Medina Lopez has proven he has deferred action status.  *See supra* note 4.  It is, admittedly, not entirely clear when that status expires.  It is a plausible reading of the evidence available that Petitioner's deferred action status expired on May 13, 2026.  However, the program Petitioner received deferred action status under generally granted deferred action for four-year periods, which would put the end of his deferred action status in 2027.  *See A.C.R. v. Noem*, 809 F. Supp. 3d 103, 111 (E.D.N.Y. 2025) (under the program, "[a] successful applicant would benefit from deferred action for four years and could apply for renewal within 150 days of expiration").  It is equally plausible that his deferred action status expires sometime in July 2027.  *See* ECF No. 11-1, PageID.129 (authorization began July 2023).  The court considers the overall record sufficient, under the *Zadvydas* framework, to put the burden on the

43

government to come forward with evidence showing when, exactly, Petitioner's deferred action status expires such that Petitioner's removal is lawful. *Zadvydas*, 533 U.S. at 701 (if "the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."). Respondents' claim at oral argument that, because USCIS was not named in this Petition, Respondents cannot, and have not, verified Petitioner's deferred action status, was deeply troubling. If this court is correct, as other courts have held, that deferred action speaks to the Executive's authority to remove Petitioner, then Respondents' answer indicates that ICE has no idea whether the noncitizens they currently hold in detention and are attempting to remove from the country can, in fact, be lawfully deported. And the effect of their argument would be that, because the agencies conducting Petitioner's removal have no way of knowing whether Petitioner can be lawfully removed, the court must allow them to conduct these potentially unlawful removals. This argument cannot possibly carry Respondents' burden to produce evidence on the legality of Petitioner's detention and removal, and the court therefore finds that

44

Petitioner's removal is not reasonably likely due to his deferred action status.

But for the sake of argument, set aside deferred action, too. As explained in detail above, Petitioner's SIJ status and pending motion to reopen operate as an independent bar on his removal on the grounds of inadmissibility for failure to be lawfully admitted to the United States. So even if Respondents are right that they can remain willfully ignorant of Petitioner's deferred action status while arranging for him to be deported to Honduras (a proposition that throws aside Petitioner's due process protections in his deferred action status), his SIJ status and motion to reopen are an independent reason to grant this Petition.

Respondents, for their part, argue that Petitioner's removal is reasonably foreseeable because while his habeas petition was pending, Respondents in fact attempted to remove him from the United States. *See* ECF No. 4. Their position is, therefore, that they are ready to remove Petitioner and that his removal can be carried out in the presumptively reasonable six-month period. ECF No. 12, PageID.136 ("the only barrier to petitioner's removal is this Court's order."). For the reasons explained in detail above, the court rejects this focus on

whether DHS is physically capable of removing Petitioner, rather than whether DHS has the legal authority to do so. Respondents ignore the effect of Petitioner's deferred action status and his SIJ status. Respondents cannot satisfy their burden to show that removal is likely by simply stating that they could unlawfully remove him within a reasonable time.

And so, until and unless terminated, the grant of deferred action supersedes the earlier final order of removal, the SIJ status operates to render his removal unenforceable on grounds of entering the United States without being lawfully admitted, both statuses are an impediment to Petitioner's lawful removal on these facts, and jurisdiction in this court is proper. Because the Executive lacks the authority to lawfully remove Petitioner, Petitioner's lawful removal is not possible in the reasonably foreseeable future. Petitioner's detainment under § 1231 therefore violates due process. *See Zadvydas v. Davis*, 533 U.S. 678, 682, 699 (2001) ("The basic federal habeas statute grants the federal courts authority to determine whether post-removal-period detention is pursuant to statutory authority."); *see, e.g. Primero v. Mattivelo*, Civil Action No. 1:25-cv-11442-IT, 2025 LX

208425, at *15 (D. Mass. July 9, 2025) ("where Petitioner has shown that USCIS granted him deferred action that will remain valid until September 7, 2026, in the absence of early termination and early termination has not occurred, and where there is no indication that Petitioner's case was reviewed prior to or since detaining him, Petitioner has shown that there is no significant likelihood of his removal in the reasonably foreseeable future.").

While Petitioner addresses the alternative view that Petitioner is held under 8 U.S.C. 1226(a) instead of § 1231 (because the removal order is not executable), and is thus entitled to a bond hearing under § 1226(a), Respondents do not assert that Petitioner is detainable under any other provision, or address alternatives, and the court declines to construct arguments for them. Respondents have also not asserted that Petitioner is a flight risk or danger to the community. Respondents will therefore be ordered to release Petitioner.

## V.   CONCLUSION

Therefore, Respondents are **ORDERED** to release Petitioner within three (3) business days of entry of this order, and to certify

compliance with this order within five (5) business days of entry of this order.

Because Petitioner did not explicitly seek injunctive relief, the temporary restraining order will be **VACATED** by operation of this order. To the extent that this order is inconsistent with the timeline set out in ECF No. 14, this order controls. However, in order to give Petitioner a chance to ensure his unlawful removal is not reattempted, **the expiration of the restraining order is STAYED for ten (10) days from entry of this order** to ensure that Petitioner has a meaningful opportunity to seek injunctive relief under the terms of this order. Petitioner shall have ten (10) days to file a motion for permanent injunction to restrain Respondents from removing him from the United States while he maintains deferred action or pursues adjustment of status under his SIJ status.

Petitioner also requested that the court award fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412. As the prevailing party, that motion is **GRANTED**. Petitioner's fee petition or bill of costs is due within 30 days of entry of this order; however, should Petitioner file a motion for injunctive relief, this deadline shall be

48

automatically extended to 30 days from entry of an order ruling on that motion, without further order of the court.

**SO ORDERED.**


Date: May 15, 2026                        s/F. Kay Behm
                                          F. Kay Behm
                                          United States District Judge